IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| SECURITIES AND EXCHANGE COMMISSION, | ) ) | |
|---|---|---|
| Plaintiff | ) ) | C.A. No. 16-50 Erie |
| v. | ) ) ) | District Judge Rothstein Magistrate Judge Baxter |
| FORTITUDE GROUP, INC., et al., Defendants. | ) ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Plaintiff's motion for default judgment against Defendant Fortitude Group, Inc. [ECF No. 13] be granted and that a permanent injunction be entered against Defendant Fortitude Group, Inc.

### II. REPORT

#### A. Relevant Procedural History

This action was initiated by Plaintiff Securities and Exchange Commission ("SEC") on February 29, 2016, pursuant to Section 21(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(d), against Defendants Fortitude Group, Inc. ("Fortitude") and Thomas J. Parilla ("Parilla"), Fortitude's chief executive officer. Plaintiff's complaint alleges that Defendants made materially false and misleading statements in various publicly-issued press releases, which falsely characterized Fortitude's purported efforts to enter into the legal marijuana business. (ECF No. 1, Complaint, at ¶ 1).

1

On or about April 8, 2016, Plaintiff filed a return of service verifying, *inter alia*, that the complaint and a summons were served on Defendant Fortitude on March 16, 2016, and, as a result, an answer to the complaint was due from Defendant Fortitude on April 6, 2016 [ECF No. 5]. After Defendant Fortitude failed to file a timely answer, Plaintiff filed a request for the entry of default on May 23, 2016 [ECF No. 11], and default was subsequently entered by the Clerk of Court against Defendant Fortitude on June 2, 2016 [ECF No. 12].

On July 26, 2016, Plaintiff filed a motion for default judgment against Defendant Fortitude, which is presently pending before this Court [ECF No. 13]. In particular, Plaintiff is requesting the immediate entry of a permanent injunction against Defendant Fortitude, by default, enjoining Defendant Fortitude from violating, directly or indirectly, Section 10(b) of the Securities and Exchange Act ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5(b) promulgated thereunder, 17 C.F.R. § 240.10b-5(b). Plaintiff further requests that its claim for a civil monetary penalty against Defendant Fortitude be deferred until such time as the liability of Defendant Parilla is determined. Since the filing of Plaintiff's motion, Defendant Fortitude has not entered an appearance in this action, nor has it responded in any way to Plaintiff's complaint or motion. This matter is now ripe for consideration.

**B.**     **Standard of Review**

Federal Rule of Civil Procedure 55(b)(2) provides that a district court may enter default judgment against a party when default has been entered by the Clerk of Court. The entry of default by the Clerk, however, does not automatically entitle the non-defaulting party to a default judgment. Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984); D'Onofrio v. Il Mattino, 430 F.Supp.2d 431, 437 (E.D.Pa. 2006). Rather, the entry of default judgment is a matter within the sound discretion of the district court. Hritz, 732 F.2d at 1180. The Third Circuit has

enumerated three factors that govern a district court's determination as to whether a default judgment should be entered: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000), citing United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984). "However, when a defendant has failed to appear or respond in any fashion to the complaint, this analysis is necessarily one-sided; entry of default judgment is typically appropriate in such circumstances at least until the defendant comes forward with a motion to set aside the default judgment pursuant to Rule 55(c)." Mount Nittany Medical Center v. Nittany Urgent Care, P.C., 2011 WL 5869812, at *1 (M.D.Pa. Nov. 22, 2011), citing Anchorage Assocs. V. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n. 9 (3d Cir. 1990).

### C. Discussion

#### 1. Entry of Default Judgment

Here, all three of the foregoing factors weigh in favor of granting default judgment against Defendant Fortitude. At this time, Defendant Fortitude has been in default for ten months and there is every reason to believe that such default will continue for the foreseeable future. Thus, if default judgment is denied, Plaintiff will be prejudiced by its inability to effectively enforce federal securities laws against a violating party for an indeterminable period of time simply because that party chooses to avoid responding to the complaint or to otherwise defend itself. As to the second and third factors, because Defendant Fortitude has failed to participate in this litigation in any way, the Court cannot speculate as to whether it has a litigable defense or whether its default is due to culpable conduct. Thus, entry of default judgment against Defendant Fortitude is appropriate. See, e.g., Broadway Music, Inc. v. Spring Mt. Area Bavarian Resort,

Ltd., 555 F.Supp.2d 537, 542 (E.D.Pa. 2008) (entering default judgment where there was "nothing in the record to suggest that defendants have a litigable defense as to liability," and where defendants' decision not to defend against a complaint's allegations was found to be grounds for concluding that default was culpable); Mount Nittany, 2011 WL 5869812, at *1.

### 2. Permanent Injunction

Section 21(d)(1) of the Exchange Act, 15 U.S.C. § 78u(d), authorizes the SEC to seek injunctive relief where a person is engaged in or about to engage in acts or practices that violate the federal securities laws. In considering a request for permanent injunction, a court must determine whether there is a reasonable likelihood that the defendant will engage in future violations of the federal securities laws. SEC v. Bonastia, 614 F.2d 908, 912 (3d Cir. 1980). Factors to be considered by a court in making this determination include "the degree of scienter involved on the part of the defendant, the isolated or recurrent nature of the infraction, the defendant's recognition of the wrongful nature of his conduct, the sincerity of his assurances against future violations, and the likelihood, because of defendant's professional occupation, that future violations might occur." Id. (citations omitted).

Because Plaintiff has shown that it is entitled to a default judgment against Defendant Fortitude, "the factual allegations of the complaint, except those relating to damages, will be taken as true," insofar as they relate to said Defendant. Comodyne I, Inc. v. Corbin, Jr., 908 F.2d 1142, 1149 (3d Cir. 1999), citing C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2688 at 444 (2d ed. 1983). According to the complaint, Defendant Fortitude "engaged in a fraudulent promotional campaign between February 2014 and May 2014, disseminating materially false and misleading press releases that portrayed Fortitude as a player in the legalized recreational and medicinal marijuana business sector" when it never "formally

operate[d] in the marijuana space or have the requisite licensure, funding, or other corporate infrastructure to run a successful marijuana-related business." (ECF No. 1, Complaint, at ¶¶ 2, 13). In particular, Defendant Fortitude "made dubious multi-million dollar annual revenue projections relating to its purported marijuana business" (Id. at ¶ 13); announced "the formation of three new majority owned subsidiaries" that were never formed (Id. at ¶¶ 17-18); announced that it had successfully launched a pre-paid debit card for marijuana purchases through Discover Financial Services that would "derive an annual profit of approximately $155 per retail card user," although the card never existed (Id. at ¶¶ 19-21); made several false and misleading statements regarding revenue-producing orders received from a purported marijuana vaporizer called "VaporVites," despite "never received any revenue-producing orders for VaporVites from a Colorado dispensary or anywhere else" (Id. at ¶¶ 22-27); announced the complimentary issuance to shareholders of Affinity Elite Cards, which were purportedly prepaid debit cards preloaded with $25 each, though the cards were never launched or issued to any shareholders (Id. at ¶¶ 28-31); and issued false and misleading financial reports reporting revenue of $ 412,162 purportedly received during the first quarter of 2014 from, *inter alia*, deposits received for the non-existent Affinity Elite Cards and the nonrevenue-producing VaporVites (Id. at ¶¶ 33-40).

Prior to its fraudulent announcement that it was entering the marijuana business, Defendant Fortitude's share price fluctuated between $0.0001 and $0.0002 per share, with an average trading volume of 73,762,900 shares. (Id. at ¶ 41). On February 21, 2014, the date of its initial announcement, Fortitude's share price rose to $0.01 per share – a 4900% increase – and its trading volume increased to over 132 million shares. (Id. at ¶ 42). Over the next three months, Fortitude's stock rose as high as $0.08 per share and settled at $0.03 per share as of May 19, 2014, with a peak trading volume of 204 million shares. (Id.).

Based on the foregoing, it is apparent that Defendant Fortitude's degree of scienter was high, and its infractions were not isolated, but recurrent, covering a multitude of topics in numerous documents disseminated over a number of months. Because Fortitude has not appeared in this action to defend Plaintiff's allegations, there has been no recognition of the wrongful nature of its conduct, nor have there been any assurances offered against future violations. In fact, Defendant Fortitude's failure to respond to this lawsuit raises significant doubt as to its willingness to avoid committing further violations to artificially raise its stock price in the future. Thus, after considering all relevant factors, the Court finds that Plaintiff has shown it is entitled to the entry of a permanent injunction against Defendant Fortitude on the terms hereafter set forth.

### III.     CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's motion for default judgment against Defendant Fortitude Group, Inc. [ECF No. 13] be granted and that a permanent injunction be entered against Defendant Fortitude Group, Inc., enjoining said Defendant from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5(b) promulgated thereunder, 17 C.F.R. § 240.10b-5(b), by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

It is further recommended that consideration of Plaintiff's claim for a civil money penalty against Defendant Fortitude be deferred until such time as the liability of Defendant Thomas Parilla has been determined.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file objections will waive the right to appeal. <u>Brightwell v. Lehman</u>, 637 F. 3d 187, 193 n. 7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Date:   February 10, 2017

cc:   The Honorable Barbara Rothstein
      United States District Judge